# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEBOJSA ZELENOVIC, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 10 C 3768 |
| v. | ) |
| | ) |
| JOHN O'MALLEY, Acting United States Marshal for the Northern District of Illinois, | ) JUDGE DAVID H. COAR |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Nebojsa Zelenovic ("Zelenovic" or "Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking relief from a certification of extraditability issued by the Honorable Arlander Keys, United States Magistrate Judge for the Northern District of Illinois. For the reasons stated below, Zelenovic's petition is DENIED.

## BACKGROUND

The Republic of Serbia seeks the extradition of Nebojsa Zelenovic to answer to a charge of homicide. Evidence provided by the Serbian government, and submitted to the magistrate judge below, indicates that the following events led to Serbia's current petition for extradition. On July 2, 2000, Zelenovic and 16-year-old Milos Dobric ("Milos") were involved in a minor traffic accident near a market in New Belgrade where Milos's family sold produce. Milos was moving his family's car, when he accidentally backed into Zelenovic's truck. Milos's mother, Vesna Dobric ("Vesna"), arrived to the scene, and an altercation ensued. Zelenovic angrily demanded payment for the damage to his truck, struck both Milos and his mother, and kicked the Dobrics' car before getting into his truck and driving away. Milos and Vesna informed Branko Dobric ("Branko"), Milos's father and Vesna's husband, about the altercation.

- 1 -

The next day, July 3, 2000, Milos and Branko were in the market, when Milos informed his father that he spotted Zelenovic. Milos and Branko then approached Zelenovic and confronted him about the prior day's incident. An argument ensued, as Branko head-butted Zelonvic and challenged him to a fight. Zelenovic, whose nose was bloodied, retreated to his butcher stall in the market, and Branko and Milos returned to their produce stall.

A short time later, Zelenovic emerged from his meat shop carrying a revolver. Dragan Stolic, a friend and co-worker of Branko, realized that Zelenovic was heading toward Branko and intervened by placing himself between the two men. Attempting to defuse the situation, Stolic and several others implored Zelenovic to put his gun away and retreat. Instead of complying, Zelenovic fired two shots into the air. The crowd scattered. Standing just five steps from Branko, Zelenovic taunted Branko before shooting him at close range. When the bullet struck Branko, he stumbled into a stall, attempting to hide from Zelenovic. Zelenovic then fired and shot Branko again.

Milos, who saw Branko fall to the ground, began screaming that Zelenovic had killed his father. Zelenovic then pointed his gun at Milos and fired from two meters away. Milos jumped aside, avoiding the bullet, and Zelenovic fled from the scene. Friends drove Branko to a nearby health center, but he died en route.

Shortly after Branko's murder, in July 2000, the district public prosecution office in Belgrade, Serbia submitted to the investigating magistrate of the district court a request to conduct investigative proceedings against Zelenovic. The request was based on the "well founded suspicion" that Zelenovic had committed the criminal offense of homicide. On August 21, 2000, the investigating magistrate issued a warrant for Zelenovic's arrest. In early December 2008, police in Westchester, Illinois took Zelenovic into custody. Zelenovic, who is unlawfully

in the United States, was transferred to the administrative custody of the United States Immigration and Customs Enforcement ("ICE").  On December 16, 2008, the United States government, acting on behalf of the Republic of Serbia, filed a complaint for Zelenovic's provisional arrest with a view toward his extradition before Magistrate Judge Keys in the Northern District of Illinois.  In a diplomatic note dated February 16, 2009, the Embassy of the Republic of Serbia formally requested that the United States extradite Zelenovic to Serbia.  In support of this request, Serbia submitted its August 21, 2000 warrant for Zelenovic's arrest, along with evidence gathered by the district public prosecutor in Belgrade.  That evidence, which was presented to the court below, included Serbian investigative reports and statements from Milos Dobric, Vesna Dobric, Dragan Stolic, and three other eye witnesses: Sasa Stamekovic, Dragomir Radovanovic, and Vukovic Njegos.  Although each witness identified Zelenovic as the owner of the nearby meat stall where the attacker ran to retrieve his revolver, apparently none of the witnesses was asked to identify Zelenovic from a photograph.  All of the witnesses' statements support the version of events detailed above.

On February 12, 2010, Magistrate Judge Keys held a hearing in this matter to consider the parties' written submissions and arguments.  Neither side called any live witnesses.  On March 21, 2010, Magistrate Judge Keys issued a Memorandum Opinion and Order and Certification of Extraditability.  As detailed in that order, Judge Keys found that: (1) Zelenovic is extraditable for the offense of attempted homicide, and (2) there is probable cause to certify that finding to the United States Secretary of State, as required under 18 U.S.C. § 3184.

On June 17, 2010, Zelenovic filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He raises three grounds for relief: (1) The magistsrate judge erroneously found that a "duly authenticated copy of the warrant of arrest" had been produced as expressly

required by Article III of the Treaty; (2) The evidence adduced at the extradition hearing was insufficient to support a finding of probable cause that Zelenovic was the accused wanted in Serbia on this extradition; and (3) The evidence adduced at the extradition hearing was insufficient to support a finding of probable cause that Zelenovic committed murder under the Serbian statute, which expressly requires the negation of "manslaughter in the heat of passion."

## STANDARD OF REVIEW

Extradition rulings are not directly appealable and may only be reviewed by way of a petition for a writ of habeas corpus. *In re Assarsson*, 635 F.2d 1237, 1240 (7th Cir. 1980) (citing *Collins v. Miller*, 252 U.S. 364, 369 (1920)). "Because the writ is not the equivalent of an appeal, it may be granted only in limited circumstances." *Assarsson*, 635 F.2d at 1240. As habeas corpus is "not a means for rehearing what the magistrate has decided," review is limited to three issues: (1) whether the magistrate judge had jurisdiction; (2) whether the offense charged is extraditable under the relevant treaty; and (3) whether the evidence presented established probable cause to extradite. *Id.* (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)); *see also Sacirbey v. Guccione*, 589 F.3d 52, 63 (2d Cir. 2009). In the extradition context, probable cause is defined as "evidence that would support a reasonable belief that [the petitioner] was guilty of the crime charged." *Lindstrom v. Gilkey*, No. 98 C 5191, 1999 WL 342320, at *9 (N.D. Ill. May 14, 1999) (internal citations and quotation marks omitted). A magistrate judge's finding of probable cause will be upheld if "there is any competent evidence to support her finding." *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993) (citing *Assarsson*, 635 F.2d at 1246).

## ANALYSIS

I.       Ground I: Whether the Arrest Warrant Satisfies the Treaty's Requirement

Serbia submitted its current extradition request pursuant to a longstanding treaty between the United States and the Republic of Serbia (the "Treaty"). Article I of the Treaty provides for the extradition of individuals who have been "charged with or convicted of" certain specified crimes. The requirement that an individual be "charged" may be satisfied without the existence of a formal "charge;" that an individual is accused, or that the requesting government intends to prosecute him, may suffice. *See Sacirbey v. Guccione*, 589 F.3d 52, 63-65 (2d Cir. 2009). Under Article III of the Treaty, where, as here, a party seeks the extradition of a fugitive who is merely charged with a crime, that party must produce "a duly authenticated copy of the warrant of arrest in the country where the crime has been committed, and of the depositions or other evidence upon which such warrant was issued." Treaty Art. III.

Zelenovic argues that the magistrate judge erred in finding that the Serbian government produced "a duly authenticated copy of the warrant of arrest" in compliance with the Treaty. In pressing this argument, Zelenovic notes that judicial reforms in Serbia resulted in the dissolution of the court that issued his arrest warrant.[1] According to Zelenovic, that warrant is no longer valid, and the magistrate judge's contrary conclusion was erroneous. Zelenovic's arguments are unavailing.

In compliance with the Treaty, the Serbian Ministry of Justice submitted a certified copy of the August 21, 2000 warrant for Zelenovic's arrest in conjunction with its formal demand for extradition. As the Government urges, Serbia's continued efforts to secure Zelenovic's extradition, and the warrant's submission as part of the Serbian extradition package, indicate that

---

[1] As Zelenovic points out, Serbia reformed its court system as part of its effort to join the European Union. This reform involved a shift from the system of municipal, district, and a supreme court, to a system of local, higher, and a court of appeals instead, in addition to a partial overhaul of the current sitting judges.

Serbia views its warrant as valid. The Government submits that this observation should end the current inquiry since United States courts generally refrain from looking beneath the judicial proceedings of foreign states. Indeed, the magistrate judge reiterated the Seventh Circuit's caution against reviewing the intricacies of foreign criminal and judicial procedures, noting:

> While our courts should guarantee that all persons on our soil receive due process under our laws, that power does not extend to overseeing the criminal justice system of other countries. This respect is embodied in the procedural framework of international extradition, which gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation.

Memorandum Opinion and Order and Certification of Extraditability ("Order") at 45-46 (quoting *In re Assarsson*, 635 F.2d at 1244) (internal quotation marks omitted).

Zelenovic's arguments to the contrary rely primarily on the Second Circuit's decision in *Sacirbey v. Guccione*, which held that a petitioner's arrest warrant was invalid because the issuing court no longer had jurisdiction over his case. *See Sacirbey*, 589 F.3d at 67. *Sacirbey* dealt with an extradition request under the same Treaty involved here, as well as an arrest warrant issued by a court that was later dissolved during judicial reform efforts.[2] In that case, the Second Circuit concluded that the petitioner's arrest warrant did not satisfy the terms of the Treaty because it "was never re-issued—or otherwise ratified—by a Bosnian court with jurisdiction over this case." *Id.* at 67. As he did before Judge Keys, Zelenovic argues that his case is analogous to *Sacirbey*, and that Serbia has failed to produce a valid arrest warrant as required by the Treaty.

In rejecting Zelenovic's current argument, the magistrate juge provided a detailed analysis of the distinctions between *Sacirbey* and this case. That analysis was proper. As Judge Keys noted, the Bosnian court in *Sacirbey* never reissued or "otherwise ratified" Sacirbey's

---

[2] *Sacirbey* involved an extradition request submitted by the Republic of Bosnia and Herzegovinia ("Bosnia"). Serbia and Bosnia are both former members of the Socialist Federal Republic of Yugoslavia, and as such, both are successors to the Treaty.

arrest warrant; in contrast, the evidence submitted by the Government here demonstrates that Zelenovic's arrest warrant was ratified by a Serbian court with jurisdiction over the matter. *See* Order at 43. To reach this conclusion, Judge Keys court relied on two letters from Judge Dragolijub Albijanic, the Acting President of the Belgrade Higher Court. In those letters, Judge Albijanic wrote that the Belgrade Higher Court "took over" the Belgrade District Court's case against Zelenovic and will assign a new number to the case once Zelenovic has been arrested and becomes available to the court. *See id.* at 43-44.

Zelenovic criticizes the magistrate judge for crediting Judge Albijanic's letters over the affidavit of Svetislav Rabrenovic, a former Serbian prosecutor and current legal practitioner. According to Rabrenovic, when Judge Albijanic wrote that the Belgrade Higher Court "took over" Zelenovic's case, he meant only that Zelenovic's case file was physically transferred to the new court. As Judge Keys held, however, Judge Albijanic's letters do not support Rabrenovic's interpretation. *See id.* at 44. To accept Rabrenovic's premise, "the Court would be forced to conclude that the Republic of Serbia instituted massive, systemic institutional challenges without providing for the transition of all of the cases that had been pending at the time of the reorganization." *Id.* Zelenovic presents no evidence to support such a conclusion. Ultimately, Judge Keys characterized Judge Albijanic's letters as sufficient evidence that the Higher Court in Belgrade ratified Zelenvoic's warrant and had jurisdiction over his case. *See id.* at 45. Because this Court agrees, Zelenovic's argument that the Serbian government failed to provide a valid arrest warrant must fail.

II. **Ground II: Whether There is Probable Cause to Support a Finding that Zelenovic is the Accused Wanted on this Extradition**

Zelenovic argues that the magistrate judge erred in finding probable cause that Zelenovic is the accused identified in Serbia's extradition request. Probable cause exists if "there is

evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused." *In re Mazur*, No. 06 M 295, 2007 WL 2122401, at \*19 (N.D. Ill. July 20, 2007) (quoting *Jenkins v. Bowling*, 691 F.2d 1225, 1230 (7th Cir. 1982)) (internal quotation marks omitted). As stated above, a magistrate judge's finding of probable cause will be upheld if "there is any competent evidence to support her finding." *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993) (citing *Assarsson*, 635 F.2d at 1246).

Challenging the magistrate judge's probable cause finding, Zelenovic argues that the Government's evidence is insufficient to identify him as the accused sought in Serbia's extradition request. According to Zelenovic, none of the witnesses presented by the Serbian government was asked to identify the accused shooter through a photo array or lineup. Zelenovic also points out that none of the witnesses had ever seen the shooter before the day of Branko's murder, and aside from Dragon Stolic, none identified Zelenovic by name; rather, they referred to the shooter as "the indicted" or the "owner of the meat shop." Zelenovic challenges the usefulness of that identification by explaining that there are more than ten butcher shops in the New Belgrade market. Additionally, although Zelenovic concedes that Stolic identified him by name, he attempts to cast doubt on Stolic's identification by arguing that it unclear how Stolic could have known the shooter's name, given that he never had seen him before the shooting.

Despite Zelenovic's arguments, at a minimum, there exists competent evidence to support the finding of probable cause. *See Bovio*, 989 F.2d at 255. That finding is supported by Stolic's identification of Zelenovic as the shooter, as well as evidence linking Zelenovic to the particular "Jabuka" meat shop at the scene of Branko's shooting. Several witness statements situated the shooting within the proximity of a meat shop: (1) Stolic stated that, after Branko head-butted Zelenovic, Zelenovic retreated to a nearby meat shop; (2) According to Milos, after

Zelenovic's retreat, he appeared from the direction of a meat shop and headed toward Branko's stall; (3) Another witness, Dragomir Radovanic, claimed that he saw the shooter carrying a revolver in front of the Jabuka shop; and (4) Crime scene investigators reported that they found a deformed bullet on the ground near the Jabuka shop and also noted that the shop suffered damage. To connect the meat shop in question with Zelenovic, Judge Keys relied on a signed statement from Zelenovic's father, Nikola Zelenovic, who reported that his son was the proprietor of the meat shop near Branko's produce stall from 1999 until July 3, 2000—the day of the shooting. Order at 28. To support its finding of probable cause, the court placed particular significance on the fact that Zelenovic last operated his meat shop on the day of Branko's murder. *See id.* at 29. Judge Keys was also persuaded that evidence of Zelenovic's flight from Serbia soon after Branko's murder signaled his guilt. Zelenovic admitted to United States immigration authorities that he entered the United States on approximately September 1, 2000 by means of an alien smuggler, after first traveling through Croatia, Italy, and Mexico. As Judge Keys noted, "[f]rom the very infancy of criminal litigation, juries have been permitted to consider flight as evidence of consciousness of guilt and thus of guilt itself." *Id.* at 28 (quoting *United States v. Starks*, 309 F.3d 1017, 1025 (7th Cir. 2002)) (internal quotation marks omitted). Zelenovic's abandonment of his meat shop and flight from Serbia, along with the witness statements detailed above, constitute competent evidence to support a finding of probable cause that Zelenovic is the accused identified in Serbia's extradition request.

### III. Ground III: Whether There is Probable Cause to Support a Finding that Zelenovic Committed the Crime of Homicide Under the Serbian Statute

Zelenovic argues that the Government has failed to present sufficient evidence that he committed the crime of homicide under Serbian law. Zelenovic's argument in this vein is two-pronged; he argues that (1) only one person was killed, whereas the Serbian crime of homicide

requires the death of several persons, and (2) the crime was committed in the heat of passion and therefore falls outside of Serbia's homicide statute. Judge Keys properly rejected these arguments.

Serbia's formal Demand for Extradition seeks Zelenovic's extradition on the basis of the "well founded suspicion" that Zelenovic committed the crime of "homicide from the Article 47 paragraph 2 point 6 of the Criminal Code of the Republic of Serbia, relating to the Article 19 of the Criminal Code of the Federal Republic of Yugoslavia." Order at 31 (quoting Gov't Ex. 2- Demand for Extradition) (internal quotation marks omitted). Article 47 defines homicide as "caus[ing] with premeditation the death of several persons other than by manslaughter in a heat of passion . . ." *Id.* at 6. Article 19 provides that "[w]hoever commences a criminal offense with premeditation but does not complete it, shall be punished for the attempted criminal offense . . ." *Id.*

Noting that the Serbian offense of homicide requires the death of several persons, Zelenovic argues that there is insufficient evidence to demonstrate that he attempted to kill Milos Dobric, as well as his father. Zelenovic does not dispute that he shot at Milos after he killed Branko. However, under his version of events, Milos attacked him in retaliation for his father's murder, and Zelenovic simply fired a shot in Milos's direction to shake him off. Zelenovic submits that it is impossible to determine whether his bullet missed Milos on purpose, and the fact that he fled from the scene rather than pursuing Milos indicates that he was not attempting to kill Milos. The Court rejects this argument; it is the type of argument that could be made any time an attempted shooter misses his target, and accepting such an argument would ignore the fact that the law punishes inchoate crimes. That Zelenovic fired a shot at Milos is "competent evidence" to support a finding of probable cause that he attempted to kill Milos, in addition to

Branko. Importantly, this conclusion is underscored by Stolic's statement that, just before the shooting, Zelenovic proclaimed his intention to kill both Milos and Branko. *See* Order at 32.

Zelenovic argues further that, because he acted in the heat of passion, there is insufficient evidence to support a finding of probable cause that he committed homicide as defined by Serbian law. Zelenovic does not challenge the magistrate judge's recitation of the law governing this issue. As Judge Keys noted, there is no fixed time period required to develop a conscious intent to kill. *See id.* at 33. Rather, "[a]ny interval of time between the forming of the intent to kill and the execution of the intent, which is sufficient duration for the accused to be fully conscious of what he intended, is sufficient to support a conviction for murder." *Id.* at 33 (quoting *United States v. Brown*, 518 F.2d 821, 826 (7th Cir. 1975)) (internal quotation marks omitted).

Zelenovic argues that there is no evidence that he was "fully conscious" of his intent to kill Branko, and not acting under the heat of passion. The Court rejects this argument. After Branko head-butted Zelenovic upon encountering him in the market, both men retreated to their respective stalls. Order at 33. Zelenovic places particular significance on the fact that Branko asked for a knife upon returning to his stall; he argues that Branko's actions indicate that the confrontation was not over, and therefore Zelenovic was still acting under the heat of passion when he subsequently shot Branko. Branko's request for a knife, however, says nothing about Zelenovic's state of mind. After both men retreated, Zelenovic reemerged with his revolver and pursued Branko in a manner that betrayed his conscious intent to kill him. He first fired warning shots, presumably to disperse the crowd and avoid killing innocent bystanders. He dismissed Stolic, who intervened by grabbing Zelenovic's hand and pleading with him to stop. *Id.* at 32. When Stolic asked, "you are surely not going to kill a man because of a fight?" Zelenvoic told

him to "get [sic] of the way, I will kill you and then the two of them." *Id.* Zelenovic then taunted the unarmed Branko before shooting him. When his first shot merely disabled Branko, Zelenovic continued to pursue him and ultimately fired another fatal shot. *Id.* at 3. Because there is ample evidence that Zelenovic acted with premeditation, and not in the heat of passion, the Court sustains Magistrate Judge Key's finding of probable cause that Zelenovic committed attempted homicide as defined by Serbian law.

## CONCLUSION

For the reasons stated above, Zelenovic's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** September 7, 2010